UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| MARSHALL WEALTH MANAGEMENT GROUP, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> PERRY C. SANTILLO, <br><br> Defendant. | Case No. 18-CV-03510-LHK <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 14 |

Plaintiffs Marshall Wealth Management Group, Inc. and David Marshall (collectively, "Plaintiffs") move for default judgment against Defendant Perry Santillo. Having considered Plaintiffs' motion, the relevant law, and the record in this case, the Court hereby GRANTS in part and DENIES in part Plaintiffs' motion.

## I.     BACKGROUND

### A.  Factual Background

On July 7, 2016, the Plaintiffs and the Defendant executed a Listing Asset Purchase Agreement ("the Agreement"). ECF 14-3 at 25-26. The Agreement sold a variety of Plaintiffs' assets, including client accounts, files, working papers, and so on. *Id.* at 10. Per the Agreement, the total purchase price was $675,000.00 with a down payment of $202,500.00. *Id.* at 12.

Defendant paid the down payment. ECF No. 1 at ¶ 13 ("Compl."). The remaining purchase price of $472,500.00 was to be paid pursuant to an Adjustable Promissory Note ("Note"). *Id.* The terms of the Note specified that payment was to be made by 16 equal quarterly installments of $32,561.29, with the first payment due on September 1, 2016. ECF No. 14-3 at 66. Per the Note, interest was assessed at a rate of 5% per annum. *Id.* at 66. The Note was secured by the assets transacted through the Agreement pursuant to the terms of a Security Agreement executed by the parties. *Id* at 55-58. Plaintiff Marshall Wealth Management Group, Inc. perfected its security interest in the transacted assets by executing a UCC Financing Statement. *Id.* at 75. The Defendant also executed a Personal Guaranty Form, which made the Defendant personally liable for all debts under the Agreement. *Id.* at 61.

Thus far, the Defendant has made a total of $110,122.58 in payments towards the debt. *Id.* at 3. The Defendant made the full payment of $32,561.29 on September 1, 2016 and December 1, 2016. *Id.* at 3. However, he only paid $20,000 on May 17, 2017, $10,000 on December 22, 2017, and $15,000 on February 5, 2018. *Id.* Section XVI(A) of the Agreement provides that the Defendant shall become liable for the entire unpaid balance and accrued interest on the Note if the Defendant fails to make a required payment within 15 days of the payment due date. *Id.* at 22. Under Section XVI(C), the Plaintiffs are required to give written notice of the default and to give the Defendant 10 days to remedy the default. *Id.* In accordance with these provisions, on March 6, 2018, Plaintiffs' attorneys sent a first letter to the Defendant notifying the Defendant that he was in default. ECF No. 14-1 at 7. The letter also specified that Plaintiffs intended to declare a default if the Defendant did not bring current the amount he then owed on the Note. *Id.* The Defendant failed to make the required payment to bring his obligations current to avoid default. *Id.* at 2. As such, in a second letter dated April 2, 2018, Plaintiffs declared a default, accelerated the entirety of the outstanding debt, and requested access to the assets transacted through the Agreement. *Id.* at 2-3. Because the Defendant failed to take any action in response to either the first or second letters, Plaintiffs bring suit.

**B. Procedural History**

On June 12, 2018, Plaintiffs failed a complaint for breach of contract against the Defendant. ECF No. 1. On July 17, 2018, Plaintiffs filed a proof of service showing that the Defendant was served with the summons and the complaint. ECF No. 10. On July 24, 2018, Plaintiffs' attorney Lindsey Berg-James filed a declaration in support of default. ECF No. 11. On July 26, 2018, Plaintiffs requested that the Clerk enter default. ECF No. 12. On July 27, 2018, the Clerk entered default against the Defendant. ECF No. 13. Plaintiffs filed the instant motion for default judgment by the Court on August 21, 2018. ECF No. 14.

## II.     LEGAL STANDARD

Pursuant to Rule 55(b)(2), the Court may enter a default judgment when the Clerk, under Rule 55(a), has previously entered the party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments."). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris*, 219 F.R.D. at 498.

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.

1986).

## III.    DISCUSSION

### A.  Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). The Court thus begins by evaluating subject matter jurisdiction and personal jurisdiction.

#### 1.  Subject Matter Jurisdiction

The Court finds that it has diversity jurisdiction over this case under 28 U.S.C. § 1332. Plaintiffs are both residents of California, and the Defendant is a resident of New York. Compl. at ¶¶ 4-7. The amount in controversy exceeds $75,000. *Id.* at ¶ 17. Thus, there is subject matter jurisdiction.

#### 2.  Personal Jurisdiction

To determine the propriety of asserting personal jurisdiction over a defendant, the Court examines whether such jurisdiction is permitted by the applicable state's long-arm statute and comports with the demands of federal due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, and therefore the jurisdictional analyses under state law and federal due process are the same. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same."). For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction exists where a defendant is physically present or where a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted). If general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant "has sufficient contacts with the forum state in relation to the cause of action." *Sher*, 911 F.2d at 1361.

a.  General Jurisdiction

The Court may exercise general jurisdiction over a defendant who is domiciled in the forum state. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Additionally, general jurisdiction over a nonresident exists where a defendant has "continuous and systematic" contacts with the forum state such that the defendant may be "haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger,* 374 F.3d at 801. Plaintiffs do not allege that the Defendant is domiciled in California. Nor do Plaintiffs allege that the Defendant has the level of continuous and systematic contacts with California that would support a finding of general jurisdiction. Accordingly, the Defendant is not subject to this Court's general jurisdiction.

b.  Consent to Personal Jurisdiction via a Forum Selection Clause

Where general jurisdiction is inappropriate, a court may still exercise jurisdiction over the nonresident defendant. Here, there is one critical term in the Agreement that weighs in favor of the exercise of personal jurisdiction. There is a choice of forum clause, which states that "[a]ny legal action or proceeding with respect to this Agreement shall be brought and maintained in the State

5

of California, County of Monterey." ECF No. 14-3 at 24. Although the Court in the instant case is located in San Jose, California, which is in Santa Clara County and not Monterey County, according to Civil Local Rule 3-2(e), "all civil actions which arise in . . . Monterey [County] shall be assigned to the San Jose Division." Even if Plaintiff had filed this case in state court in Monterey County, Defendant could have removed the case to the San Jose Division of the Northern District of California. The Court has not found any legal precedent suggesting that filing a case in a federal district court with jurisdiction over a particular county renders unenforceable a forum selection clause if that clause specifies the county in which suit is to be filed, and the federal district court is not located within that county. Thus, the Court finds that it has personal jurisdiction over the Defendant.

"[A] variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court. For example, the parties may consent to jurisdiction through a forum selection clause in a contract . . . ." *S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) (internal quotation marks and citations omitted). "Because forum selection clauses are presumptively valid, they should be honored 'absent some compelling and countervailing reason.'" *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). "The Ninth Circuit has recognized that accepting a forum selection clause evidences consent to personal jurisdiction in that forum." *Twitch Interactive, Inc. v. Johnston*, 2018 WL 1449525, at *4 (N.D. Cal. Jan. 22, 2018) (citing *Ross*, 504 F.3d at 1149). If a party has executed a forum selection clause, "[t]he court need not embark on a 'minimum contacts' analysis where the defendants have consented to California jurisdiction." *Craigslist, Inc. v. Kerbel*, 2012 WL 3166798, at *6 (N.D. Cal. Aug. 2, 2012) (quoting *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1069 (N.D. Cal. 1991)).

"Accordingly, the Court may enforce the forum selection clause unless it is unreasonable." *Twitch Interactive*, 2018 WL 1449525, at *4. A clause is unreasonable "(1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would be effectively deprived of his day in court were the clause enforced;

and (3) if the enforcement would contravene a strong public policy of the forum in which the suit is brought." *Holland Am. Line Inc. v. Wartsila North Am., Inc.*, 485 F.3d 450, 457 (9th Cir. 2007). The party disputing the enforceability of a forum selection clause bears the burden of proving the clause is unreasonable. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1052 (N.D. Cal. 2010) (citing *Zenger-Miller*, 757 F. Supp. at 1069); *see also Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1137 (9th Cir. 2005) ("We presume that the . . . forum selection clause is prima facie valid and unenforceable unless [the defendant] can show that enforcement would be unreasonable under the circumstances" (internal quotation marks omitted).). In cases where the defendant has not appeared, the burden still lies with the defendant; it does not shift to the plaintiff moving for default judgment. *See Naturemarket*, 694 F. Supp. 2d at 1052-53.

Additionally, for the Court to exercise personal jurisdiction over a defendant, the defendant must have been served in accordance with Federal Rule of Civil Procedure 4. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in accordance with Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction" (footnote omitted).).

Here, there is no indication that the terms of the contract are unfair or that the forum selection clause is unreasonable. The Agreement was signed by both parties, and the forum selection clause is clearly set forth in the executed version of the Agreement. Thus, the forum selection clause does not appear to be the product of any fraud. The Defendant has not repudiated the clause, so there is no evidence in the record that the Defendant would be deprived of an opportunity to litigate this case if the clause were to be enforced. Finally, in view of the United States Supreme Court and the Ninth Circuit's presumption of a forum selection clause's validity, there are no countervailing public policy reasons why the clause ought not to be enforced.

Analogously, in the context of a motion for default judgment, the *Twitch Interactive* court found that a forum selection clause found in the terms of use of a website were enforceable against a defaulting defendant. 2018 WL 1449525, at *4. In the instant case, there is an even more clear-cut consent to the forum selection clause than in the *Twitch Interactive* case because the Defendant

United States District Court
Northern District of California

in the instant case affirmatively agreed to the terms of the Agreement, whereas a website user in *Twitch Interactive* only passively agrees to the website's terms of use and usually does not have to execute a contract to use the site. *Cf. Kerbel*, 2012 WL 3166798, at *6 (enforcing a forum selection clause found in a website's terms of use). Therefore, the forum selection clause found in the Agreement is enforceable.

Additionally, service on the Defendant was proper. The affidavit of service shows that Plaintiffs properly effected service by mail and acknowledgement of receipt of service pursuant to Fed. R. Civ. P. 4(e)(1) and Cal. Code Civ. Proc. § 415.40. ECF No. 10. There is no indication in the record that this service was improper. Therefore, the Court properly exercises personal jurisdiction over the Defendant.

### B. Whether Default Judgment is Proper

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction over the Defendant is appropriate, the Court now turns to the *Eitel* factors to determine whether entry of default judgment against the Defendant is warranted.

### 1. First *Eitel* Factor: Possibility of Prejudice

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant. Absent a default judgment, Plaintiffs in this case will not obtain payment to which they are entitled for assets Plaintiffs have already provided to the Defendant. Thus, the first factor weighs in favor of granting default judgment.

### 2. Second and Third *Eitel* Factors: Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

First, the Court analyzes which state's law governs. Then, the Court turns to the second and third *Eitel* factors.

#### a. California Law Governs

Before addressing the merits and sufficiency of Plaintiffs' claims, the Court must determine which state law governs the dispute. The Agreement contains a choice-of-law provision indicating that California law applies. Compl. at 28 ("This Agreement and the rights and

Case No. 18-CV-03510-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

1    obligations of the parties hereunder shall be construed in accordance with and governed by the

2    laws of the State of California . . . .". "A federal court sitting in diversity must look to the forum

3    state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix*

4    *Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2011). To determine whether California law is

5    applicable, the Court must determine "whether the chosen state has a substantial relationship to the

6    parties or their transaction, or . . . whether there is any other reasonable basis for the parties'

7    choice of law." *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 466 (1992). A substantial

8    relationship between the choice of law state and the contracting parties exists if a party is

9    domiciled in the state. *Id.* at 467. A reasonable basis for enforcing a choice-of-law clause exists if

10   one of the parties resides in the state. *Id.* Here, Plaintiffs are California residents. Therefore, there

11   is both a substantial relationship between the choice of law state and the contracting parties, as

12   well as a reasonable basis for enforcing the choice-of-law clause per *Nedlloyd Lines*. Accordingly,

13   the Court will apply California law. Next, the Court turns to an analysis of the second and third

14   *Eitel* factors.

15         b.   The Second and Third *Eitel* Factors

16         The second and third *Eitel* factors address the merits and sufficiency of Plaintiffs' claims

17   as pleaded in the Complaint. These two factors are often analyzed together. *See Dr. JKL Ltd. v.*

18   *HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the

19   merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed

20   together."). In its analysis of the second and third *Eitel* factors, the Court will accept as true all

21   well-pleaded allegations regarding liability. *See Fair Hous. of Marin*, 285 F.3d at 906 ("[T]he

22   general rule is that well-pled allegations in the complaint regarding liability are deemed true.").

23   The Court will therefore consider the merits of Plaintiffs' claims and the sufficiency of the

24   Complaint together.

25         The Plaintiffs assert 6 Counts in total. Counts 1, 2, and 3 are for breach of contract, Count

26   4 is for open book account, Count 5 is for account stated, and Count 6 is for foreclosure of security

27   interest pursuant to the Security Agreement. The Court addresses each of the Counts in turn.

28

9

### c. Counts 1, 2, and 3: Breach of Contract

Counts 1, 2, and 3 of the Complaint are for breach of contract. They essentially state the same claim. Count 1 claims that Defendant breached the Agreement; Count 2 states that Defendant breached the Promissory Note; Count 3 states that Defendant breached the Written Guarantee. Compl. at ¶¶ 10-33.

The elements of breach of contract under California law are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen'l Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968). Plaintiffs allege that Plaintiffs had a contract with Defendant for the purchase of assets in exchange for a total price of $675,000. Compl. at ¶ 10. The purchase was funded by the Promissory Note, which is payable to Plaintiffs in the amount of $472,500 (the total purchase price minus the down payment). *Id.* at ¶ 21. The Written Guarantee was executed so that the Defendant personally guaranteed all indebtedness to Plaintiffs. *Id.* at ¶¶ 29-30. Plaintiffs allege that they have performed under the terms of the Agreement, Promissory Note, and Written Guarantee by transacting the assets sold under the Agreement. *Id.* at ¶ 14. Plaintiffs further allege that the Defendant has not upheld his side of the bargain because Defendant has failed to timely make payments towards the debt owed to Plaintiffs per the terms of the Agreement, Promissory Note, and Written Guarantee, and that Plaintiffs have been financially damaged by Defendant's failure to pay. *Id.* at ¶¶ 15-16, 24, 32. This is sufficient to state a claim for breach of contract under Counts 1, 2, and 3.

### d. Count 4: Open Book Account

"A 'book account' is a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relationship, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and

10

manner." *Professional Collection Consultants v. Lauron*, 8 Cal. App. 5th 958, 969 (2017).

Examples of a book account include a law firm's billing statements or a ledger sheet recording amounts due for hay deliveries. *Id.* A book account is open when there is a balance on the account. *Id.* However, "[a]n express contract, which defines the duties and liabilities of the parties, whether it be oral or written is not, as a rule, an open account." *Id.* (citing *Durkin v. Durkin*, 133 Cal. App. 2d 283, 290 (1955)). Only by "mutual understanding" of the parties may a balance due under an express contract be an item in an open account; "in such a case the cause of action is upon the account, not under the [contract]." *Parker v. Shell Oil Co.*, 29 Cal. 2d 503, 507 (1946).

Pursuant to *Professional Collection Consultants*, an express contract is not an open account. Here, the Plaintiffs' grievances stem from breaches of express contracts, not book accounts. Moreover, there is no indication from the pleadings that the parties have reached a mutual understanding that the balance due under the express contract may be treated as an item in an open account. Thus, Plaintiffs' pleadings are insufficient to state a claim under an open book account.

e.   Count 5: Account Stated

"An account stated is an agreement, based on the prior transactions between the parties, that the items of the account are true and that the balance struck is due and owing from one party to another." *Gleason v. Klamer*, 103 Cal. App. 3d 782, 786 (1980). The elements of an account stated are: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due." *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (1969). "The action upon an account stated is not upon the original dealings and transactions of the parties. Inquiry may not be had into those matters at all. It is upon the new contract by and under which the parties have adjusted their differences and reached an agreement." *Gardner v. Watson*, 170 Cal. 570 (1915). "Therefore, under California law, a debt which is predicated upon the breach of the terms of an express contract cannot be the basis of an account stated." *Nat'l Ins. Co. of Hartford v. Expert Automotive*

*Reconditioning, Inc.*, 2013 WL 6190591 (C.D. Cal. Nov. 24, 2013) (citing *Moore v. Bartholomae Corp.*, 69 Cal. App. 2d 474, 477-78 (1945); *Rio Linda Poultry Farms v. Fredericksen*, 121 Cal. App. 433, 435-36 (1932); *Bennett v. Potter*, 180 Cal. 736, 745 (1919)).

Because the Plaintiffs' claims are predicated upon the breach of the terms of express contracts, Plaintiffs cannot state an account stated claim per *Nat'l Ins. Co. of Hartford*. Therefore, Plaintiffs' pleadings are insufficient to state an account stated claim.

### f. Count 6: Foreclosure of Security Interest

Under California law, a security interest is enforceable against a debtor if: "(1) value has been given[;] (2) [t]he debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party[;] . . . [and (3) t]he debtor has authenticated a security agreement that provides a description of the collateral." Cal. Comm. Code § 9203(b). California law has conformed its law with the Uniform Commercial Code ("UCC"). Cal. Comm. Code § 9101. Under the UCC, to sign a document is to authenticate it. *In re Wharton*, 563 B.R. 289, 298 (B.A.P. 9th Cir. 2017) (citing *In re Schwalb*, 347 B.R. 726, 745 (Bankr. D. Nev. 2006)).

In the instant case, value was given by Plaintiffs in exchange for a security interest in transacted assets as set forth in the Agreement, the debtor is in possession and has rights in the collateral, and the debtor has signed a security agreement that provides a description of the collateral. Compl. at ¶¶ 12, 14, 41, pp. 75-78. This is sufficient to state a claim for foreclosure of a security interest.

### g. Conclusion

In sum, Plaintiffs have stated a claim in Counts 1, 2, and 3 (breach of the Agreement, breach of the Promissory Note, and breach of the Written Guarantee) and Count 6 (foreclosure of security interest). Plaintiffs have failed to state a claim in Counts 4 and 5 (open book account and account stated) because the predicate for these claims are express contracts executed between the parties. Thus, because the Plaintiffs have sufficiently stated claims for breach of contract and foreclosure of security interest, the second and third *Eitel* factors weigh in favor of default judgment.

### 3. Fourth *Eitel* Factor: The Amount of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Trung Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the potential loss caused by the defendant's actions. *Id.*

Plaintiffs' motion for default judgment seeks to recover an unpaid principal of $395,102.30, prejudgment interest of $10,148.18, and attorneys' fees of $12,525.60. ECF No. 14-3 at 4-5. In total, Plaintiffs' motion seeks $417,776.08. In support of its request, Plaintiffs proffer declarations and copies of the underlying contracts that reflect the outstanding balance. Though the sum of money requested here is not insignificant, it is not without precedent. Analogously, the court in *Landstar Ranger, Inc. v. Parth Enters., Inc.* found that a request of $243,817.34 was reasonable because the debt was well documented and "the damages Landstar seeks are consistent with the terms of the contracts." 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010); *see also First Home Bank v. Hershey Interests, Inc.*, 2018 WL 3460148, at *3 (C.D. Cal. July 16, 2018) (holding that a request of $343,265.42 including attorneys' fees and interest was reasonable because "[t]his figure is properly documented, [and] contractually justified" pursuant to the terms of a promissory note); *Liu Hongwei v. Velocity V Ltd.*, 2018 WL 3414053, at *8 (C.D. Cal. July 11, 2018) (finding that a request of $4,000,000 was justified); *United States v. Edwards*, 2018 WL 2078834, at *7 (E.D. Cal. May 4, 2018) (finding that a request of $1,034,795.09 for unpaid taxes was reasonable because the debt was properly documented); *United States v. Roof Guard Roofing Co.*, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) (holding that a request "totaling over a million dollars" was reasonable because the tax debt was substantiated with proof provided by the government).

Based on the evidence provided, the Court finds that the damages Plaintiffs seek are reasonable because such damages are substantiated by the contract documents as well as the

associated declarations. Moreover, the Defendant has only made two payments compliant with the terms of the Promissory Note and has only sporadically made other payments towards the debt over the course of the past 2 years. Therefore, the default is serious considering the extended period of time over which the Defendant has had an opportunity to cure his default and make timely payments. Thus, the fourth *Eitel* factor weighs in favor of default judgment.

### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case. Defendant has failed to make an appearance in this case. The Court therefore takes the allegations in the Complaint as true. *Fair Hous. of Marin*, 285 F.3d at 906. Given that posture as well as the fact that this is a contract dispute where the terms of payment have been set forth in writing, the Court finds that disputes of material facts are unlikely.

The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect. A summons was issued for the Defendant on June 13, 2018. ECF Nos. 5, 10. Proof of service was filed on July 17, 2018. ECF No. 10. Nothing in the record indicates that the service as to the Defendant was improper. The Defendant, however, has not appeared in this case. The Defendant was made aware of his default through two written notices by Plaintiffs' counsel mailed via certified mail, which the Defendant received. ECF No. 14-1 at 3. These notices were mailed to the same address upon which service of process was effectuated. *Id.* Thus, nothing before the Court suggests that the Defendant's failure to appear was the result of excusable neglect. In these circumstances, it appears that the Defendant has no excusable reason to fail to appear in the instant case.

The fifth and sixth *Eitel* factors thus favor entry of default judgment.

### 5. Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself. *See, e.g.*,

United States District Court
Northern District of California

*Naturemarket, Inc.*, 694 F. Supp. 2d at 1061; *Hernandez v. Martinez*, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014). Although the Defendant has been properly served at his address, the Defendant has not made an appearance nor challenged the entry of default. The likelihood of the case proceeding to a resolution on the merits is unlikely. The Court finds that the seventh *Eitel* factor is outweighed by the other six factors that favor default judgment. *Id.* at *9 (seventh *Eitel* factor outweighed by remaining six factors where defendants failed to appear for over a year and a half prior to the default judgment). The Court therefore finds that default judgment is appropriate in this case.

### C. Damages

A plaintiff seeking default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). Federal Rule of Civil Procedure 55 does not require the Court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. *See Action SA v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters., Inc. v. LMC Int'l, Inc.*, 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004).

As discussed above, Plaintiffs request damages for (1) the unpaid principal amount of debt, (2) accumulated interest, and (3) attorneys' fees and costs. The Court addresses each in turn.

### 1. Unpaid Principal

Plaintiffs have attached the declaration of Plaintiff David T. Marshall in support of default judgment. ECF No. 14-3. In his declaration, Marshall states that he is owed $395,102.30 in unpaid principal. *Id.* at 4. This figure was calculated in light of Defendant's sporadic payments towards the debt. *Id.* at 3. Per the Marshall declaration, Defendant's payments were applied to interest first and then to principal pursuant to the terms of the Promissory Note. *Id.* Plaintiffs' calculated unpaid principal amount appears correct given the per annum interest rate of 5%, the various payments Defendant made, and the beginning principal amount of $472,500.00. Thus, the Court finds that Plaintiffs are entitled to $395,102.30 in unpaid principal.

### 2. Accumulated Interest

In the Marshall declaration, the prejudgment interest at the rate of 5% per annum from February 6, 2018 to August 10, 2018 totals $10,148.18. *Id.* at 4. The Court finds that Plaintiffs are entitled to $10,148.18 in prejudgment interest because the 5% per annum interest rate is correct.

### 3. Attorneys' Fees and Costs

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000) (citation omitted). "As the underlying breach of contract claim is a state law claim, this court must apply California law on attorneys' fees." *Suretec Ins. Co. v. BRC Constr., Inc.*, 2013 WL 6199021, at *2 (E.D. Cal. Nov. 27, 2013) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).

In California, "the prevailing party in an action is entitled to recover its costs," including "[a]ttorney fees, when authorized by" (1) "[c]ontract," (2) "[s]tatute," or (3) "[l]aw." *Royster Constr. Co v. Urban W. Cmtys.*, 40 Cal. App. 4th 1158, 1169 (1995). Pursuant to Section XX of the Agreement, "[i]f any action is brought by either party against the other party arising out of this Agreement, the prevailing party shall recover from the other party reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution or defense of such action." Compl. at 28. Consequently, a contract expressly authorizes the award of attorneys' fees and costs. California Civil Code § 1717 "governs the issue of attorneys' fees under a contract," *Makreas v. First Nat'l Bank of N. California*, 2014 WL 2582027, at *5 (N.D. Cal. June 9, 2014), and provides the following, in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a). Consistent with § 1717(a), "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a

determination of an appropriate attorneys' fee award." *Margolin v. Reg'l Planning Comm'n of L.A. Cty.*, 134 Cal. App. 3d 999, 1004 (1982).

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. V. Drexler*, 22 Cal. 4th 1084, 1095 (2000). "[T]rial courts must carefully review attorney documentation of hours expended." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). The Court must exclude "hours that were not reasonably expended in pursuit of successful claims," *Harman v. City & Cty. Of San Francisco*, 158 Cal. App. 4th 407, 417 (2007), "[a]ttorney time spent on services which produce no tangible benefit for the client," *Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 452 (1998), and "duplicative or excessive" work, *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 161 (2006). A reasonable hourly rate is defined as "that prevailing in the community for similar work." *PLCM Grp.*, 22 Cal. 4th at 1095.

In the instant case, Plaintiffs request the following fees: attorney Lindsey Berg-James— 25.2 hours at a rate of $355 per hour for a total of $8,946; attorney Anne Secker—1.3 hours at a rate of $425 per hour for a total of $552.50; and paralegal Charlena Nossett—16.3 hours at a rate of $160 per hour for a total of $2,608. ECF No. 14-1 at 4.

Upon reviewing the billing records submitted by counsel, the Court finds that most of the charges were incurred in pursuit of the instant case and are therefore justified with two exceptions. First, there are charges relating to an order to show cause. *See, e.g.*, ECF No. 20 at 10. There was no order to show cause in the instant case. Thus, billing for work relating to an order to show cause constitutes hours not reasonably expended in pursuit of successful claims in the instant case. *See Harman*, 158 Cal. App. 4th at 417. Thus, the Court declines to award the $857.50 billed for the order to show cause.

Second, Plaintiffs failed to state the account stated and open book claims (Counts 4 and 5). Thus, charges relating to the preparation of these two failed claims are not reasonably expended in pursuit of the other 4 successful claims in the instant case (Counts 1, 2, 3, and 6). *See id.* The Court therefore reduces by 1/3 all time spent on the preparation of the complaint and research on

available remedies, as the complaint stated 6 Counts in total. With Plaintiffs failing to state 2 Counts, this amounts to 1/3 of the total number of Counts pleaded. The Court does not deduct from any other billed work because no other billed work appears to relate to the 2 failed Counts. For example, the motion for default judgment does not address any individual Counts, so no deduction is necessary for the work billed to prepare the motion for default judgment.

Subtracting all the charges relating to an order to show cause and 1/3 of the charges relating to preparation of the complaint and research on remedies, the reduced lodestar calculations are as follows for attorneys Berg-James and Secker and paralegal Nossett: attorney Berg-James billed 21.26 hours at a rate of $355 per hour for a total of $7,547.30; attorney Secker billed 1.13 hours at a rate of $425 per hour for a total of $480.25; and paralegal Nossett billed 13.74 hours at a rate of $160 per hour for a total of $2,198.40.

Turning to the requested attorneys' fees rates, attorney Berg-James bills at a rate of $355 per hour. At the time when most of the charges were incurred, Attorney Berg-James had over 5 years' experience practicing law after graduating from law school. ECF No. 14-1 at 3. In a similar situation where a defendant defaulted in a breach of contract case, a Northern District of California court found a rate of $450 per hour reasonable for an attorney with 7 years' experience. *US Foods, Inc. v. Lalla Holding Corp.*, 2014 WL 4809073, at *2 (N.D. Cal. Sept. 25, 2014). Also, for a first year associate in an ERISA case in which the defendant defaulted, a Northern District court approved a rate of $290 per hour. *Board of Trustees of Laborers Health & Welfare Trust Fund for Northern California v. C & L Coatings, Inc.*, 2012 WL 7748318, at *10-11 (N.D. Cal. Dec. 18, 2012); *see also Livingston v. Art.com, Inc.*, 2015 4319851, at *13 (N.D. Cal. Apr. 17, 2015) (awarding an attorney with 2.5 years' experience an hourly rate of $325 in an intellectual property default case). Moreover, in 2017, attorney Berg-James was awarded fees in a contract matter at an hourly rate of $330. ECF No. 20 at 2. Thus, the Court finds that a rate of $355 per hour is reasonable for attorney Berg-James, who has over 5 years' experience.

Attorney Secker has been a member of the California State Bar since 1980 and has extensive experience litigating business-related matters in state and federal courts. *Id.* at 3. Her

United States District Court
Northern District of California

rate of $425 an hour is reasonable in view of the Northern District's award of $450 per hour for an attorney with just 7 years' experience. *See US Foods, Inc.*, 2014 WL 4809073, at *2; *see also Calix, Inc. v. Alfa Consult, S.A.*, 2015 WL 3902918, at *5 (N.D. Cal. June 24, 2015) ("As a partner who practiced law for more than 20 years, Mr. Dranit's rate of $400 per hour was also reasonable").

Paralegal Nossett billed at a rate of $160 per hour. She has over 30 years of experience. ECF No. 20 at 3. This is in line with the rates at which paralegals bill. *See, e.g.*, *Board of Trustees v. Tim Kruse Construction, Inc.*, 2013 WL 5487368, at *4 (N.D. Cal. Oct. 2, 2013) (awarding $145 per hour for paralegal work); *IBEW Local 595 Health & Welfare Trust Fund v. ACS Controls, Inc.*, 2010 WL 1948884, at *3 (N.D. Cal. May 11, 2010) (awarding $150 per hour for paralegal work).

Turning to the requested costs, there are only two costs which Plaintiffs' counsel seek reimbursement for—the complaint's filing fee, and postage expenses. These total $419.10. The Court finds that these expenses are reasonable.

In sum, the Court awards $10,225.95 in attorneys' fees and $419.10 in costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion for default judgment against the Defendant. Defendant shall pay Plaintiffs a total of $415,895.53, which consists of $395,102.30 of unpaid principal, $10,148.18 of accumulated interest, and $10,645.05 of attorneys' fees and costs. Plaintiffs shall foreclose on the security interest.

**IT IS SO ORDERED.**

Dated: January 2, 2019

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California